UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIFE FOR RELIEF &
DEVELOPMENT, a Foreign Not-For
Profit Organization,

        Plaintiff,

v.          Case Nos. 12-CV-13550
        Honorable Denise Page Hood

BANK OF AMERICA, N.A.,
a national banking association,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#74]

### I.  INTRODUCTION

This matter comes before the Court pursuant to Defendant Bank of America, N.A.'s ("BANA"), Motion for Summary Judgment **[Docket No. 74, filed January 9, 2015]**. Plaintiff filed a Response to the Motion for Summary Judgment **[Docket No. 77, filed February 13, 2015]**. Defendant filed a Reply to the Response **[Docket No. 79, filed March 6, 2015]**. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**, in part, and **DENIED**, in part.

### II.  BACKGROUND

1

Plaintiff Life for Relief & Development ("LIFE") is a charity that was founded in 1992, and is operated and controlled by Americans citizens who are of Arab ethnicity.  Beginning in 2010, LIFE opened two accounts with BANA and held two BANA credit cards.  LIFE maintained other accounts with entities other than BANA.  One BANA account was used for miscellaneous overhead expenses, and the second account was used as a "back-up" account.

Christa Marshall, a Senior Anti-Money Laundering investigation unit ("AML") compliance specialist in BANA's Global Financial Crimes Group ("GFCG"), opened an inquiry into LIFE's accounts on April 9, 2012.  Marshall reviewed LIFE's accounts after receiving an FBI tip about another BANA customer who had monetary transactions with LIFE.  On May 16, 2012, Marshall completed a 30 Day Closure Recommendation form, recommending that LIFE's accounts be closed.  The form was sent to Loretta Digsby, a BANA employee in the Consumer Line of Business.  Digsby is responsible for reviewing closure recommendations and making a final determination.  After Digsby approved the closure recommendation, BANA notified LIFE of its decision to close the accounts on May 21, 2012.

The bank did not give any reason other than stating that the "checking and savings accounts [would] be restricted from all debits and credits in 21 days and closed 30 days from the date of [the] notice" **[Pl.'s Resp. to Def.'s Mot. for**

2

**Summ. J., Ex. H, "BANA Closure Letter"].** In response to a letter sent by former Congressman Hansen Clarke, to BANA on behalf of LIFE, BANA stated that "[i]n accordance with the terms of the . . . *Deposit Agreement and Disclosures* publication[,]… either the bank or the customer [could] close [the] account at any time" **[***id.***, Ex. K, "Andrea Lowry Letter to LIFE"]**.

As a result of the closures, Plaintiff brought the following claims against Defendant in the Third Amended Complaint **[Docket No. 49, filed November 21, 2013]**: (i) Discrimination based on race and ethnicity in violation of 42 U.S.C. § 1981; and (ii) Discrimination based on race and ethnicity in violation of 42 U.S.C. § 1982.

Now, before the Court is Defendant's Motion for Summary Judgment **[Docket No. 21, filed February 28, 2014]**. In its Motion, Defendant argues that it is entitled to summary judgment on the 42 U.S.C. § 1981 claim, because LIFE failed to identify any direct evidence that it was discriminated against. Defendant also argues LIFE has no evidence of a similarly situated non- protected person that BANA treated more favorably, and that LIFE does not even allege receiving services in a markedly hostile manner and in a manner that a reasonable person would find objectively discriminatory. Defendant contends that BANA had a legitimate reason to close the bank accounts, and LIFE has no evidence to establish pretext. Defendant then argues that it is entitled to summary judgment on the 42

3

U.S.C. § 1982 claim, because LIFE has not shown an interference with a property right or demonstrated impairment to any of its property interests.

Plaintiff responded to the Motion for Summary Judgment **[Docket No. 77, filed February 13, 2015]**. LIFE argues that the evidence it has presented establishes a prima facie case of discrimination under the 42 U.S.C. § 1981. LIFE identifies the Zakat Foundation, a charity providing the same assistance as LIFE but led by individuals of Turkish descent, as a similarly situated non-protected person that was treated more favorably. In addition, LIFE argues the reasons BANA provided for closing its account, have shifted and are inconsistent, which are evidence of pretext. Lastly, LIFE argues that the 42 U.S.C. § 1982 claim is viable, because BANA interfered with LIFE's ability to use and benefit from the funds that were in its BANA accounts.

Defendant BANA filed a Reply Brief in Support of Summary Judgment **[Docket No. 79, filed March 6, 2015]**. First, Defendant argues that LIFE has not provided evidence other than mere allegations of specific entities being similarly situated, nor has it provided evidence that BANA reviewed those entities' accounts for suspicious activity. Second, Defendant argues that LIFE and the entities LIFE claims to be similarly situated but outside the protected class are part of the same protected class—Middle Eastern. Third, Defendant contends that Plaintiff cannot establish a prima facie case by trying to present other circumstantial evidence

4

supporting an inference of discrimination. Fourth, Defendant argues that the reasons for closing the account have not changed, but rather BANA merely elaborated on the reasons it closed the accounts.

### III. STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the

[nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

## IV. ANALYSIS

Under the burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), a plaintiff may establish a *prima facie* case of discrimination by presenting indirect or circumstantial evidence which creates an inference of discrimination. *Id.* at 802.

If a plaintiff proves a prima facie case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Once the employer carries this burden, the burden then shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804-805; *Ang*

6

*v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991).  The plaintiff may meet this burden by showing:  (1) that the stated reasons had no basis in fact; (2) that the stated reasons were not the actual reasons; or (3) that the stated reasons were insufficient to explain the employer's action.  *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991).  The burden of persuasion always remains, however, with the plaintiff.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

      To establish a prima facie cause under 42 U.S.C. § 1981, Plaintiff must allege facts showing by a preponderance of evidence that:

> (1) plaintiff is a member of a protected class;
>
> (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and
>
> (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001).  In the commercial establishment setting, this test "is written with the understanding that 'the comparison will never involve precisely the same set of ... [conduct] occurring over the same period of time and under the same sets of circumstances.' " *Id*. at

871 (quoting in part *Callwood v. Dave & Buster's, Inc.*, 98 F.Supp.2d 694, 707 (D.Md.2000) (alterations in original)). A plaintiff is not required to prove intentional discrimination as an element of the prima facie case. *Id.* at 870.

Plaintiff and Defendant do not dispute that Plaintiff has satisfied the first two prongs, but Defendant argues that Plaintiff has not satisfied the third prong. Plaintiff asserts that BANA closed its accounts because the organization is an Arab American organization. Plaintiff argues that Defendant had knowledge of the Arab American ancestry of the members of the organization based on the signed signature cards of Plaintiff's Agent, Mohammed Alomari, a commonly known Arabic name, and the photograph on Mr. Alomari's personal driver's license, also presented to the bank as identification. Plaintiff also provides a list of names submitted to the Defendant in a "Nonprofit Corporation Information Update," as requested by the bank. The names can be deemed "stereotypical Arabic names."

Plaintiff also states that it provided the bank with a copy of its Articles of Incorporation as well as pamphlets and brochures, many of which had Arabic writing on them. Plaintiff states that members of the organization also physically went to the bank to make deposits, again putting Defendant on notice of their Arabic ethnicity based on their outward appearance and names. Plaintiff asserts that based on the (1) signature cards, (2) driver's licenses, (3) personal interactions with Defendant, (4) the articles of incorporation, (5) State of Michigan "Nonprofit

Corporation Information Update," (6) pamphlets and brochures, and (7) interactions between officers of the organization and Bank employees, Defendant knew or should have known that Life For Relief & Development is an Arab American organization.

Plaintiff has provided evidence of a similarly situation non-profit or organization that is not run by persons of the Arab race, and is still able to continue to bank with Defendant BANA.  Mr. Alomari testified, based on personal knowledge, that the Zakat Foundation still banks with BANA.  Plaintiff alleges the Zakat Foundation is a similarly situated charity that is run by individuals of Turkish descent.  BANA and LIFE disagree on whether individuals of Turkish descent are outside the protected class.  Although Turkey is deemed part of the Middle East[1] thereby resulting in Turkish people being considered Middle Eastern, Turks are ethnically distinct from Arabs.  The Zakat Foundation, if it is in fact being run by individuals of Turkish descent, is outside of Plaintiff's protected class.  Plaintiff has proffered evidence based on personal knowledge to suggest that the Zakat Foundation is similarly situated and is able to maintain an account with BANA. **[Docket No. 77 at 24, filed February 13, 2015].**

---

[1] *Turkey—The World Factbook*, CENTRAL INTELLIGENCE AGENCY, https://www.cia.gov/library/publications/the-world-factbook/geos/tu.html (last visited September 3, 2015).

Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether the reasons BANA provided for closing LIFE's account were mere pretext. At first, BANA did not provide a reason for closing. After an inquiry, BANA indicated that it closed the account, because it had the right to do so under the *Deposit Agreement and Disclosures* publication. The Closure Recommendation form states that the reason for closing is that the "transactions are not consistent with expected activity," unusual activity in the form of unknown sources of cash deposits, activity inconsistent with the activities of a charity, and expenditures appear to be personal in nature **[Def.'s Mot. for Summ. J., Ex A, "AML Account Closure Form"]**. During her deposition, Christina Marshall, Senior Anti-Money Laundering Compliance Specialist at BANA, did not mention the personal expenditures as a reason, and added a new reason—"the appearance of structuring cash deposits" **[Pl.'s Resp. to Def.'s Mot., Ex. C, "Christa Marshall Deposition" at p.21]**. The Closure Recommendation form, however, does not mention structuring and there is no box checked next to the option corresponding to "[a]ccounts/entities exhibiting patterns of structured transactions" ("AML Account Closure Form" at p.1). These inconsistencies create doubt as to the reasons BANA provides for closing the account. *Cicero v. Borg-Warner Auto.*, Inc., 280 F.3d 579, 592 (6th Cir. 2002) ("[I]nconsistency raises an issue whether the proffered reason truly motivated the defendants' decision"). Because a genuine

10

issue of material fact exists as to pretext and to the existence of similarly situated persons outside the protected class who were not deprived of the right to bank with BANA, the Court denies summary judgment as to the 42 U.S.C. § 1981 claim (Count I).

BANA argues that it is entitled to summary judgment on the 42 U.S.C. § 1982 claim, because LIFE has not shown an interference with a property right or demonstrated impairment to any of its property interests fails.  Although 42 U.S.C. §§ 1981 and 1982 are to be analyzed pursuant to the same framework, § 1981 applies to contractual relationships, and § 1982 applies to real and personal property rights.  *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009); 42 U.S.C. §§ 198, 1982.  LIFE has not alleged that BANA prevented it from using the funds in the account.  The use of a bank account is governed by a contractual relationship, but does not constitute a property interest in and of itself.  For these reasons, the Court grants summary judgment as to the 42 U.S.C. § 1982 claim (Count II).

V.     ORDER

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **[Docket No. 74, filed January 9, 2015]** is **GRANTED**, in part, and **DENIED**, in

part. Specifically, summary judgment is granted as to the 42 U.S.C. § 1982 claim (Count II) and denied as to 42 U.S.C. § 1981 claim (Count I).

                                          s/Denise Page Hood
                                          Denise Page Hood
                                          United States District Judge

Dated: September 30, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2015, by electronic and/or ordinary mail.

                                          s/LaShawn R. Saulsberry
                                          Case Manager