**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LIFE FOR RELIEF & DEVELOPMENT,

               Plaintiff,             CASE NO. 12-13550
                                     HON. DENISE PAGE HOOD

v.

BANK OF AMERICA, N.A.,

               Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION
## FOR A NEW TRIAL [#143]

### I.      BACKGROUND/FACTS

After a jury trial in this matter, on August 16, 2016, the Jury rendered its verdict and found that Defendant Bank of America, N.A. ("BANA") did not intentionally discriminate against Plaintiff Life for Relief & Development ("Life for Relief") on the basis of race or ethnicity when BANA closed Life for Relief's bank account. (Doc # 136) Judgment was entered in favor of BANA and against Life for Relief. (Doc # 139) This matter is now before the Court on Life for Relief's Motion for a New Trial filed on September 15, 2016. (Doc # 143) A Response and Reply have been filed. (Doc # 145; Doc # 146)

Life for Relief argues that it should be granted a new trial on the following grounds: (1) the Jury's verdict was against the weight of the evidence; (2)

BANA's "Golden Rule" violations during opening and closing; (3) Defense witness Frederick Stone should have been barred from testifying; (4) the Court erroneously allowed BANA to withhold witnesses Loretta Digsby and Christa Marshall, forcing Life for Relief to use their depositions in lieu of live testimony during its Case in Chief; and (5) improper comments made by Defense Counsel linking Life for Relief to the Government caused the verdict to be influenced by prejudice and bias. For the reasons set forth below, the Court denies Life for Relief's Motion for a New Trial.

## II. ANALYSIS

### A. Standard of Review

Rule 59 of the Federal Rules of Civil Procedure provides that a court may, after a jury trial, "grant a new trial on all or some of the issues—and to any party— . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. Specific grounds for a new trial have included: the verdict is against the weight of the evidence; damages are excessive; for other reasons, the trial was not fair; substantial errors in the admission or exclusion of evidence; errors in giving or refusing to give instructions; and misconduct of counsel. *Clark v. Esser*, 907 F. Supp. 1069, 1073 (E.D. Mich. 1995); *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980); *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 414 (6th Cir.

2012).  The grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing of abuse of discretion. *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).  The trial court has broad discretion in deciding a motion for a new trial to prevent a miscarriage of justice.  *Clark*, 907 F. Supp. at 1073; *Peter Kiewit Sons' Co.*, 624 F.2d at 756; *Fryman v. Fed. Crop Ins. Corp.*, 936 F.2d 244, 248 (6th Cir. 1991).

## B. Verdict and Weight of the Evidence

Life for Relief argues that the Court should grant a new trial because the Jury's verdict was unreasonable and against the great weight of the evidence.  In considering a motion for a new trial on the ground that the verdict is against the weight of the evidence, the court cannot set aside the verdict simply because it believes another outcome is more justified.  *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543-44 (6th Cir. 2007).  The court must accept the jury's verdict and can only overturn the verdict if the verdict was against the weight of the evidence and the verdict was unreasonable.  *Id.*  Courts are not free to reweigh evidence and set aside jury verdicts merely because juries could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.  *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982).

Life for Relief argues that the Jury's verdict was unreasonable and against the great weight of the evidence because Life for Relief proved its *prima facie*

case, proved that the reasons offered by BANA for closing the account were not its true reasons, and proved that the only motivating factor was that the Arab ethnicity of Life for Relief was a risk to BANA. Life for Relief notes that the Jury deliberated for less than 50 minutes. BANA argues that the evidence at trial supported that BANA's decision to close Life for Relief's account was based on unusual and suspicious account activity, and not on racial discrimination.

Under the burden shifting approach developed in *McDonnell Douglas Corp. v. Green*, a plaintiff must establish a *prima facie* case of discrimination by presenting indirect or circumstantial evidence which creates an inference of discrimination. 411 U.S. 792, 802 (1972). To prove a *prima facie* case, the plaintiff must establish that:

> (1) plaintiff is a member of a protected class;
>
> (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and
>
> (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001).

If the plaintiff proves a *prima facie* case, the burden of persuasion shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its decision. *Id.* Once the defendant carries this burden of persuasion, the plaintiff

must prove by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but rather, a pretext for discrimination. *Id.* at 804-05; *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: (1) that the stated reason had no basis in fact; (2) that the stated reason was not the actual reason; or (3) that the stated reason was insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In this case, the parties agreed that Life for Relief established the first two prongs of its *prima facie* case. Regarding the third prong, Life for Relief argues that the evidence at trial showed that it is operated by Arabs and BANA closed its account, while Zakat Foundation, a charity operated by Turkish Americans, was allowed to continue banking with BANA. BANA argues that at no point during the trial did Life for Relief identify an entity outside of their protected class that was otherwise similar to Life for Relief and continues to maintain accounts with BANA. Life for Relief's Chief Operating Officer, Mohammed Alomari ("Alomari"), testified that Zakat Foundation was a non-profit organization doing similar work as Life for Relief and banking with BANA, and that Zakat

Foundation was operated by Turkish Americans (Doc # 129, Pg ID 2633). However, Life for Relief did not present evidence suggesting that Zakat Foundation utilized its BANA account in a manner similar to Life for Relief's use of its BANA account, which Alomari testified was primarily for deposits and to cover overhead expenses. *See* Doc # 129, Pg ID 2617.

At trial, BANA offered the following legitimate, nondiscriminatory reason for closing Life for Relief's account: unusual and suspicious account activity. Christa Marshall ("Marshall") testified that BANA determines whether account closure is warranted based on unusual and suspicious account activity. (Doc # 142, Pg ID 3168) Frederick Stone ("Stone") testified that the standard for recommending closure of bank accounts is whether account activity is unusual or suspicious. (Doc # 142, Tr. Pg 178) Marshall testified that Life for Relief's account activity was unusual and suspicious for three reasons: the account activity was inconsistent with that of a charity; the bulk of deposits were cash deposits; and there were indications of structuring. (Doc # 142, Pg ID 3181) Marshall testified that, based on a holistic view of Life for Relief's account activity for thirteen months, the account activity was inconsistent with the account activity of other charities that she had reviewed because it did not include as many check deposits, credit card transactions, and transactions going out representing what the charity stands for as she would expect. *Id.* at 3182. Marshall testified that the transactions

appeared to be for personal expenses rather than business expenses. *Id.* at 3185. Marshall further testified that, although she would expect a charity to receive donations in a manner that creates a paper trail for tax purposes, the bulk of deposits into Life for Relief's account were cash deposits in several locations other than the location of the Life for Relief office. *Id.* at 3187. Marshall also testified that she noticed two indications of structuring. *Id.* at 3189. The first was a series of four deposits totaling over $10,000.00 on January 23, 2012 between 9:45 a.m. and 10:18 a.m. in four different neighborhoods in Seattle, Washington. *Id.* at 3189-92. The second was a series of five deposits totaling over $10,000.00 on December 19 and 20, 2011, some within minutes of each other, in the same bank in North Carolina. *Id.* at 3193-96.

Alomari testified that cash was the least frequent way in which Life for Relief received donations. He stated that funds in the account were used to purchase items like kitchen supplies, sweets, cleaning supplies, and a cell phone holster. He testidied that the account activity would look unusual to someone viewing solely the BANA account activity. (Doc # 130, Pg ID 2713-15, 2702-03, 2706)

Regarding pretext, Life for Relief asserts that the evidence at trial showed "beyond all doubt" that the three reasons that Marshall gave for identifying the account activity as unusual and suspicious were false. First, Life for Relief

maintains that Marshall admitted to having "no knowledge of how charities operated" and that she could not identify a single non-charity expense. However, it does not follow that Marshall's testimony regarding her experience reviewing the account activity of charities, what she would expect the account activity of a charity to look like, and how the Life for Relief account activity differed from that is therefore "upended." Second, Life for Relief notes that Marshall testified that every cash deposit into any BANA account is from an unknown depositor. Again, it does not follow that Marshall's testimony regarding her expectation, based on experience, that a charity would receive more donations in a manner that creates a paper trail as opposed to in cash is therefore "upended." Third, Life for Relief maintains that Marshall admitted, and Ms. Loretta Digsby ("Digsby") concurred, that there was "no evidence of structuring." The Court finds no such broad admissions in the record. Life for Relief argues that because BANA's legitimate reasons were all proven false, Mr. Dennis Lormel's ("Lormel") testimony that Arabs are an inherent risk to banks, combined with Marshall's testimony that she recognized Life for Relief's ethnicity as Arab and that part of her work team's responsibility at BANA was to assess risk, prove that BANA intentionally discriminated against Life for Relief based on its Arab ethnicity being an inherent risk.

The Court finds that a reasonable jury could have concluded that Life for Relief did not meet its ultimate burden of proving that BANA intentionally discriminated against Life for Relief. After reviewing the parties' arguments, the Court concludes that the Jury's verdict was not unreasonable in light of the evidence presented at trial. A new trial is not warranted on this ground.

## C. Golden Rule

Life for Relief argues that the Court should grant a new trial because Defense Counsel made improper "Golden Rule" arguments during opening and closing statements by repeatedly asking the Jury to put themselves in Marshall, Digsby, or Stone's shoes. BANA argues that it did not ask the Jury to put themselves in anyone's shoes, but rather asked the Jury to assess what Marshall and others actually thought, since the central question the Jury had to determine was whether BANA was motivated by discrimination in closing the account. BANA argues that Defense Counsel's arguments addressed this standard, which was proper. BANA further argues that even if it had made Golden Rule arguments, the Court's jury instructions were sufficient to cure any prejudice. BANA also notes that Life for Relief did not object to the alleged Golden Rule arguments during opening or closing.

Golden Rule arguments ask the jury to put themselves in a party's place, inviting decision based on bias and prejudice rather than consideration of the facts.

*Mich. First Credit Union v. Cumis Ins. Soc.*, 641 F.3d 240, 249 (6th Cir. 2011). In assessing whether the verdict was influenced by improper argument, the court looks at the totality of the circumstances, including the nature and frequency of the comments, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, whether it is a close case, and the verdict itself. *Id.* (citing *Peter Kiewit Sons' Co.*, 624 F.2d at 756). Improper arguments made during opening or closing statements do not require reversal when isolated and not made with deliberate intent to inflame jury prejudice, nor when rectified by the court's instruction to the jury that only the evidence in the case be considered. *Mich. First Credit Union*, 641 F.3d at 249-50; *United States v. Shalash*, 108 F. App'x 269, 281 (6th Cir. 2004).

Life for Relief has provided no citation to the record, and the Court is under no duty to sift through the record in search of evidence in support of a party's position. *See In re Blazo Corp.*, 1995 WL 764130, *3 (6th Cir. Dec. 27, 1995); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Nevertheless, the Court has reviewed Defense Counsel's opening statement, in which he stated as follows.

> [Y]ou have to look at this from Christa's perspective, that someone who is looking just at Life's Bank of America account is going to see donations or things coming in but not going out for that purpose. Let me just show you one of the documents. Now, this is a Life document. This is something that Life used and received. And this is a cash receipt that the money from this went to Bank of America's

account. And it says the donation is for Syria orphans. You see orphans checked. And you see that $1889.00 went into Bank of America's account. When Christa was looking at just what is coming in and going out, she did not see outbound money for any of the things she was expecting to see from a charity that was receiving donations. That was her experiences on how charities work. . . . And what we're going to show you is that form their perspective looking at this Bank of America account with the information they had, it didn't appear that this was operating like a charity. . . . From Christa's perspective, it is all about account activity.

(Doc # 129, Pg ID 2589-91) The Court has also reviewed Defense Counsel's closing statement, in which stated as follows.

[I]n a little while you all are going to be answering a question and your answer to that question will determine whether you collectively believe that Christa, Fred and Loretta intentionally discriminated against Life for Relief because they're Arab Americans. Your answer to that question, members of the Jury, will determine whether you believe, looking at it from the perspective of Christa Marshall that there was any unusual or suspicious activity in the account.

(Doc # 140, Pg ID 2969)

The Court first notes that Life for Relief did not object during opening or closing to the alleged "numerous" Golden Rule violations, and therefore, waived any objections. The Court also finds that Defense Counsel's statements quoted above were not inappropriate Golden Rule arguments because they directed the Jury to consider the evidence of unusual and suspicious account activity that was available to Marshall at the time she made her recommendation that Life for Relief's account be closed. The Court further concludes that, even if Defense Counsel made inappropriate Golden Rule arguments in opening and closing, there

11

is no evidence that the statements were made with the purpose of inflaming jury prejudice, and the Court's instructions to the Jury to consider only the evidence and that statements and arguments by lawyers are not evidence were sufficient to cure any minimal amount of prejudice. *See Mich. First Credit Union*, 641 F.3d at 249; Doc # 140, Pg ID 3018. A new trial is not warranted on this ground.

## D. Testimony of Stone

Life for Relief argues that the Court should grant a new trial because Stone should have been barred from testifying at trial. Life for Relief maintains that Stone was "never disclosed prior to the Final Pretrial Order." At the same time, Life for Relief argues that "Stone's identity being disclosed in 2014 . . . is irrelevant" because he was not an employee of BANA at that time and lived in North Carolina, so he could not have been deposed. Life for Relief also asserts that there was no reason to discover him prior to trial, since he was not listed as a witness who may testify at trial prior to the Joint Final Pretrial Order ("JFPTO"). Life for Relief argues that it was highly prejudiced by Stone's testimony, that its ability to cross examine Stone was severely limited, and that Stone was improperly permitted to testify on matters within the scope of a 30(b)(6) witness and an expert witness.

BANA argues that a new trial is not warranted because Stone was identified as a fact witness in an April 2014 discovery response and as a "may call" witness

in the JFPTO, and there were no other witness disclosure deadlines. BANA also argues that, even if Stone's disclosure was untimely, the failure to timely disclose was harmless and substantially justified. BANA notes that the Court took multiple steps to ensure that Stone's testimony as a fact witness would be fair, limiting the scope of his testimony, ordering BANA to delay calling him, and ordering BANA to provide Life for Relief with a detailed outline of his testimony.

Local Rule 16.2 requires parties to furnish a JFPTO containing witnesses.

Each party shall list all witnesses whom that party will call and all witnesses whom that party may call. This listing shall include, but is not limited to, the disclosures required under Fed. R. Civ. P. 26(a)(3)(A)(i) and (ii). A party may, without further notice, call a witness listed by another party as a "will call" witness. Except as permitted by the Court for good cause a party may not list a witness unless the witness was included on a witness list submitted under a prior order or has been deposed. The list shall state whether the witness is an expert and whether testimony will be offered by deposition. Only listed witnesses will be permitted to testify at trial, except for rebuttal witnesses whose testimony could not be reasonably anticipated before trial, or except for good cause shown. The provisions of Fed. R. Civ. P. 37(c)(1) shall apply to a failure to list a witness.

E.D. Mich. LR 16.2(b)(8). Rule 26(a)(1)(A) of the Federal Rules of Civil of Procedure requires a party to provide the name and, if known, the address and telephone number of each individual likely to have discoverable information during initial disclosure. "If a party fails to . . . identify a witness as required by Rule 26 . . ., the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ.

P. 37(c)(1). The Sixth Circuit considers five factors in order to assess whether the omitted or late disclosure is "substantially justified" or "harmless":

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015) (citation omitted). Rule 37(c)(1) provides the court with the option to order alternative sanctions "instead of" exclusion of the undisclosed evidence "on motion and after giving an opportunity to be heard." Fed. R. Civ. P. 37(c)(1).

The Court finds that Stone was timely disclosed. BANA identified Stone as "Director/Senior AML Risk Manager, consulted regarding recommendation to close Plaintiff's accounts" in their Amended Answers and Objections to Plaintiff's First Set of Interrogatories on April 2, 2014, over two years before trial. (Doc # 113-2, Pg ID 2078) BANA correctly notes that the scheduling Order does not include a witness disclosure date. (Doc # 89) BANA listed Stone as a "may call" witness in the JFPTO which was timely submitted to the court on July 18, 2016. (Doc # 124, Pg ID 2321; Doc # 89, Pg ID 1533) The JFPTO fulfilled BANA's disclosure obligations under Rule 26(a)(3). *See* E.D. Mich. LR 16.2(a); Fed. R. Civ. P. 26(a)(3)(B); *Mason v. Artic Cat, Inc.*, No. 11-111390, 2012 WL 1570861, at *4 (E.D. Mich. May 4, 2012).

Even if BANA's disclosure of Stone had been untimely, the Court finds that late disclosure would have been harmless and properly addressed by the Court so that Life for Relief was not unduly prejudiced. This Court has already analyzed the *Howe* factors in this case. (Doc # 127, Pg ID 2427-29) Again, the Court finds that Stone was properly allowed to testify as a fact witness. Regarding the first factor, surprise to the party against whom the evidence would be offered, the Court finds that Stone was disclosed over two years before trial, and Life for Relief had ample opportunity to depose him. As the Court already noted, "there needed to have been some more concerted effort on [the part of Counsel for Plaintiff] to have this resolved in the discovery phase." *Id.* at 2428.

Regarding the second factor, the ability of that party to cure the surprise, Stone was disclosed as having been consulted regarding closure of the account, and he testified as Marshall's supervisor in his role of reviewing her closure recommendation. As the Court previously noted, allowing Stone's deposition would have required reopening of discovery. The Court took multiple steps to mitigate any potential surprise to Life for Relief. First, on August 2, 2016, the Court ordered that BANA inform Life for Relief by the end of the day if Stone was going to testify to something dramatically different than Marshall or Digsby. *Id.* at 2429. Second, when Life for Relief objected ten days later that the outline that it received on August 2nd was not sufficient, the Court ordered that BANA delay

calling Stone and call another witness first.  (Doc # 142, Pg ID 3159-61)  Third, at that time, the Court also ordered that BANA provide a more detailed outline of Stone's testimony, beyond just a laundry list of topics, regarding anything that Stone would testify to outside of what Marshall had already testified to.  *Id.* Fourth, upon receipt of the detailed outline (Doc # 143, Pg ID 3305-06), the Court gave the parties the opportunity to be heard regarding any objections, and then the Court engaged in a line by line analysis of Stone's proposed, outlined testimony. (Doc # 142, 144-58)  Fifth, the Court significantly limited the scope of Stone's testimony, including the exclusion of proposed testimony that overlapped topics identified in Life for Relief's 30(b)(6) deposition notice.  *Id.*

Regarding the third factor, the extent to which allowing the evidence would disrupt the trial, the Court finds that Stone's testimony did not disrupt the trial to a prejudicial degree, given all of the aforementioned steps that the Court took to cure surprise to Life for Relief and to limit the scope of Stone's testimony.

Regarding the fourth factor, the importance of the evidence, Stone, as Marshall's supervisor who approved the closure of Life for Relief's account, had important, firsthand information about the central dispute in this case.

Regarding the fifth factor, the nondisclosing party's explanation for its failure to disclose the evidence, as discussed above, BANA had disclosed Stone over two years before trial, but, as this Court already stated, "there was never any

further effort to have him deposed or give any testimony." (Doc # 127, Pg ID 2429)

The Court concludes that Stone was properly allowed to testify, and that a new trial is not warranted on this ground.

## E. Deposition Testimony of Digsby and Marshall in Life for Relief's Case in Chief

Life for Relief argues that the Court should grant a new trial because the Court erred in allowing BANA to "withhold" Digsby and Marshall forcing Life for Relief to use their depositions in lieu of live testimony in its Case in Chief, "in blatant violation of Local Rule 16.2." Life for Relief argues that this was prejudicial because its Case in Chief was "significantly undermined," while BANA had the luxury of presenting Digsby and Marshall's live testimony in a more favorable light. Life for Relief also argues that BANA deliberately withheld Marshall by listing her as a "may call" witness knowing that "it was fully intent on calling her live."

BANA responds that Digsby and Marshall were outside the Court's subpoena power and could not be compelled to testify in Life for Relief's Case in Chief. BANA also argues that Life for Relief was not unduly prejudiced because the Court allowed deposition testimony in lieu of live testimony, as well as a wide-ranging cross examination of these witnesses by Life for Relief when they voluntarily arrived for BANA's Case in Chief.

Local Rule 16.2 provides that "[a] party may, without further notice, call a witness listed by another party as a 'will call' witness" on the JFPTO. E.D. Mich. LR 16.2(b)(8). While the Court prefers live testimony, it is within the Court's discretion to allow a party to use deposition testimony in lieu of live testimony. *See Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990). Rule 45(c) of the Federal Rules of Civil of Procedure provides that "[a] subpoena may command a person to attend a trial . . . only . . . (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed or regularly transacts business in person . . . ." Fed. R. Civ. P. 45(c). Rule 83 authorizes courts to adopt their own local rules; however, these cannot conflict with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 83; *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991).

Digsby resides in Charlotte, North Carolina, and Marshall resides in Vancouver, Washington. Both are far beyond 100 miles from Detroit, Michigan. The Court again finds that Local Rule 16.2 did not expand the Court's subpoena power, and that pursuant to Rule 45(c) of the Federal Rules of Civil of Procedure, the Court could not compel Digsby or Marshall to appear at trial for Life for Relief's Case in Chief, or for BANA's Case in Chief for that matter. BANA correctly notes that, had these witnesses chosen to stay home, BANA would have

had no recourse at trial either. The Court finds that it properly exercised its discretion to allow Life for Relief to use their deposition testimony in its Case in Chief. The Court also finds that any prejudice was cured when the Court additionally exercised its discretion to allow Counsel for Plaintiff to conduct wide-ranging cross examination of these witnesses, including asking them everything all over again. *See* Doc # 129, Pg ID 2540-41. Life for Relief did cross-examine and re-cross-examine both witnesses when they voluntarily arrived to provide live testimony for BANA's Case in Chief.

The Court concludes that it did not err or violate Local Rule 16.2 with regards to Digsby and Marshall, and that a new trial is not warranted on this ground.

## F. Comments Linking Life for Relief to the Government

Life for Relief argues that the Court should grant a new trial because improper comments made by Defense Counsel linking Life for Relief to the Government caused the verdict to be influenced by prejudice and bias. BANA responds that the Court exercised its discretion throughout the trial to keep out evidence that could be unfairly prejudicial, in particular evidence that an FBI phone call about another BANA customer triggered the investigation that led to BANA closing Life for Relief's account.

### 1. Defense Counsel's Question Linking the Closure of Life for Relief's Comerica Account with the Government

During Alomari's direct examination, he testified that eight different banks closed Life for Relief's bank accounts. (Doc # 129, Pg ID 2640-42) During cross-examination of Alomari, Defense Counsel began to ask: "And Comerica closed the bank accounts after the government came into Life for Relief - -" *Id.* at 2642. Life for Relief objected, and the Court immediately excused the Jury from the courtroom. *Id.* at 2642-43. After giving the parties an opportunity to be heard, the Court sustained the objection finding that the question was not relevant and more prejudicial than probative because BANA did not know whether the Comerica account was closed as a result of an FBI raid. *Id.* at 2652. Upon the return of the Jury, the Court instructed them to disregard the question and not give it any consideration in this matter. *Id.* at 2655. After the Jury was dismissed, Life for Relief made an oral motion for a mistrial, which the Court denied. *Id.* at 2670-71. Life for Relief argues that the Court should have granted a new trial.

In considering a motion for a new trial on the ground of improper comments by counsel, the court analyzes: "the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself." *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir. 2012) (quoting *Mich. First Credit Union*, 641 F.3d at 249). As the Sixth Circuit has explained,

> [W]hether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination. The trial court is, of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial. . . . [T]he power to set aside [a] verdict for misconduct of counsel should be sparingly exercised on appeal.

*Balsley*, 691 F.3d at 761 (quoting *Peter Kiewit Sons' Co.*, 624 F.2d at 756).

After reviewing the Court's ruling in this matter, the Court concludes that it did not abuse its discretion in finding that Defense Counsel's question regarding Comerica closing a bank account after the government came into Life for Relief did not warrant a new trial. This was the single mention in the trial directly linking Life for Relief to the Government. It was made in response to Alomari testifying during direct regarding all the banks that had closed Life for Relief's accounts. While the Court found that Life for Relief had not "opened the door" to this question about the Government, the Court warned Life for Relief to be careful about not opening the door. (Doc # 129, Pg ID 2663) The Court sustained Life for Relief's objection, and Defense Counsel moved on. The Court finds that its instructions to the Jury were sufficient to cure any prejudice.

## 2. Evidence of the Call that Led BANA to Investigate Life for Relief

Life for Relief argues that, in addition to excluding mention of the Government, the Court should have also excluded evidence regarding the call that Marshall received that led BANA to investigate Life for Relief's account activity.

Life for Relief claims that evidence of the call was highly prejudicial because "a reasonable juror left to wonder about who the ominous call came from would conclude it came from" the Government. BANA responds that there was no error in allowing Marshall to testify about how her investigation began, noting that Life for Relief failed to object to this line of questioning during trial.

"Broad discretion is given to the district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *United States v. Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002).

Prior to trial, Life for Relief filed a Motion in Limine seeking to exclude evidence of an FBI call regarding another BANA customer, Syrian Relief and Development, which led Marshall to look at Life for Relief's account. The Court ruled that Marshall could testify regarding the call that led her to look at Life for Relief's account; however Marshall could not testify that this call came from the FBI because that was irrelevant and more prejudicial than probative. (Doc # 127, Pg Id 2430-32) Defense Counsel correctly notes that it was Counsel for Plaintiff who characterized this call as "mysterious" beginning with his opening statement. (Doc # 129, Pg ID 2566) During trial, Marshall testified that she received a call about unusual activity of Syria Relief and Development, another BANA customer, and that based on this call, she reviewed other BANA customers that Syria Relief

and Development had transacted with, as was her standard practice, which included Life for Relief. (Doc # 142, 3171-73) Stone later testified that the investigation of Life for Relief "grew out of an existing investigation that we were already looking at a different customer." *Id.* at Tr. Pg 165.

After reviewing the Court's ruling in this matter, the Court concludes that it properly allowed the Jury to hear that the investigation into Life for Relief began after a phone call about another BANA customer that transacted with Life for Relief, but excluded evidence that the call was from the FBI as irrelevant and more prejudicial than probative. The origin of the investigation, without prejudicial mentions of the Government, was relevant to whether racial discrimination motivated BANA to close Life for Relief's account—the central issue in this case. Life for Relief made no contemporaneous objections during this line of questioning, and thereby, waived any objections. A new trial is not required based on this issue.

### 3. Qualifications and Experiences of BANA's Witnesses

Life for Relief argues that it was prejudiced by testimony from Marshall and Stone regarding their qualifications and experience because it connected Life for Relief to the Government via the "ominous" call that Marshall received which led to the investigation. BANA argues that there was no error in allowing Marshall and Stone to give this background testimony, in the same manner that the Court

allowed Life for Relief's witnesses to testify regarding their backgrounds and experiences. BANA argues that Marshall and Stone's backgrounds and experiences were relevant to rejecting Life for Relief's theory that their actions were discriminatory and incompetent.

Marshall testified that, in her role in the anti-money laundering group at BANA, she worked with the FBI, DEA, Secret Service, CIA, local law enforcement, and the military—including on the Boston Bombing and Times Square Bombing cases. (Doc # 142, Pg ID 3169-70) She also testified that she received two awards from Secret Service. *Id.* at 3170. Life for Relief objected to the questions regarding recognitions from Homeland Security and Secret Service, on the grounds that the question was leading and "I'm not even sure if it isn't bordering on prejudicial." *Id.* The Court found the initial question to be leading and asked Defense Counsel to rephrase. Life for Relief objected again this time on hearsay grounds. The Court overruled that objection. *Id.* Marshall testified that she received an award from Homeland Security. *Id.* at 3171. Defense Counsel did not further pursue that line of questioning.

Stone testified that his background related to investigating financial services included prior work with the Sheriff's Department and 26 years with the U.S. Secret Service, which at the time was part of the U.S. Treasury Department. *Id.* at Tr. Pg 161. Stone testified that his work included investigating Treasury violations

such as counterfeiting, credit card fraud, bank fraud, and forgeries. *Id.* at Tr. Pg 162. Life for Relief did not object during this line of questioning.

Having reviewed the parties' arguments and the record, the Court concludes that it did not err or abuse its discretion in allowing Marshall and Stone to testify as to their backgrounds and experiences. Life for Relief did not contemporaneously object, except as to one question, and Life for Relief had the opportunity to cross examine Marshall and Stone, as well as to elicit testimony from its own witnesses regarding their backgrounds and experiences. A new trial is not required based on this issue.

### 4. BANA's References to the Patriot Act

Life for Relief argues that it was prejudiced by reference to the Patriot Act in Defense Counsel's opening statement because it connected Life for Relief to the Government. BANA responds that it referenced the Patriot Act during opening in connection with the requirement that banks establish anti-money laundering programs, and Life for Relief did not contemporaneously object. BANA also notes that Life for Relief introduced references to the Patriot Act as well in connection with the Patriot Act's requirement that banks engage in "due diligence" regarding its customers.

During opening statement, Defense Counsel made a reference to the Patriot Act stating the Patriot Act requires all banks to have anti-money laundering

programs to identify unusual and suspicious activities in their bank accounts. (Doc # 129, Pg ID 2580-81) Defense Counsel then made a second reference also during opening stating that Stone "actually helped start the anti-money laundering program in response to the Patriot Act at Bank of America." *Id.* at 2591. Life for Relief did not contemporaneously object.

Life for Relief later introduced the Patriot Act's requirement that banks engage in "due diligence" with respect to their customers through Lormel's deposition testimony during its Case in Chief. Counsel for Plaintiff then referenced this requirement several times throughout his closing argument. (Doc # 140, Pg ID 2920, 2927, 2940, 2949, 2952)

The Court excluded proposed testimony from Stone that BANA was required to create an anti-money laundering group because of the Patriot Act. (Doc # 142, Tr. Pg 156; Doc # 143-3, Pg ID 3305) The Court also denied BANA's request for a jury instruction that federal law requires that banks create and maintain anti-money laundering groups. (Doc # 140, Pg ID 2882-84)

Having reviewed the parties' arguments and the record, the Court concludes that a new trial is not warranted based on Defense Counsel's reference to the Patriot Act during opening statement. Life for Relief did not contemporaneously object, and the Court finds the reference was not made with the purpose of inflaming jury prejudice. The Court finds that any potential prejudice would have

been cured by the Court's instructions to the Jury to consider only the evidence and that statements and arguments by lawyers are not evidence. (Doc # 129, Pg ID 2547; Doc # 140, Pg ID 3018)

The Court concludes that, in light of the totality of the circumstances, and when viewed against the entirety of the record, the remarks that Life for Relief complains of do not warrant a new trial. The remarks were fairly isolated, covered a short time period compared to the length of the trial, were not so egregious as to inflame the Jury, and were not directed at creating extraneous matters or unrelated subjects. To the extent the remarks were prejudicial, the Court finds it properly instructed the Jury and, when objected to, the Court sustained the objection and Defense Counsel moved on.

### 5. Exclusion of Plaintiff's Proposed Rebuttal Exhibit

Life for Relief argues that it was prejudiced by the Court's exclusion of its proposed rebuttal exhibit. Life for Relief sought to introduce BANA's answer to an interrogatory admitting that no government agency recommended or otherwise took part in the decision making that led to the closure of Life for Relief's account. (Doc # 77-6, Pg ID 1187-94) The Court denied Life for Relief's request to have that answer read into the record because it would "open the door" to excluded evidence, and the Court found any mention of the Government in connection with

the closure of Life for Relief's account would be unduly prejudicial. (Doc # 140, Pg ID 2890-91)

"Broad discretion is given to the district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *Jackson-Randolph*, 282 F.3d at 376. After reviewing the Court's ruling in this matter, the Court concludes that it properly excluded Life for Relief's proposed rebuttal exhibit as more prejudicial than probative. A new trial is not required based on this issue.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff Life for Relief & Development's Motion for a New Trial (Doc # 143) is DENIED.

Dated: August 23, 2017                           s/Denise Page Hood
                                                 Chief, U.S. District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 23, 2017, by electronic and/or ordinary mail.

                        s/Julie Owens
                        Acting in the absence of LaShawn Saulsberry
                        Case Manager